IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Case No. 16-cr-00267-LKG |
| ) | |
| DANTE D. BAILEY, *et al.*, ) | Dated: June 12, 2025 |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

The Defendant, Maurice A. Pollock, has moved to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821. ECF No. 1872. This motion is fully briefed. ECF Nos. 1872 and 1898. No hearing is necessary to resolve this motion. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court **DENIES** Mr. Pollock's motion to reduce sentence.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**[1]

**A.   Factual Background**

Mr. Pollock is a federal prisoner, currently incarcerated at United States Penitentiary ("USP") Victorville, which is located in Adelanto, California. ECF No. 1872 at 2. Mr. Pollock is serving a 144-month sentence after having been convicted of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF Nos. 722 and 723.

Mr. Pollock's Sentence

On August 31, 2017, Mr. Pollock pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and to one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF No. 602 (Plea Agreement). Pursuant to the Plea Agreement, Mr. Pollock admitted to the following facts:

> Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters,"

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the Defendant's motion to reduce sentence, the Government's response in opposition thereto, the parties' Plea Agreement and the presentence report. ECF Nos. 1872, 1898, 602 and 706.

was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Second Superseding Indictment.  MMP was modeled after the Italian Mafia, and was organized hierarchically with a "Don" at the top and various "Bosses," "Underbosses," "Capos," "Lieutenants," and "Mobsters" underneath.  For many years, MMP controlled the drug trade in large swaths of Northwest Baltimore City.  The gang's drug shop in the 5200 block of Windsor Mill Road was particularly lucrative due to its close proximity to Interstate 70, and it frequently attracted drug customers driving from western Maryland and neighboring states.  MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities, and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts, and eliminate rivals.  For these and other reasons, MMP constituted an enterprise engaged in, and whose activities affected, interstate or foreign commerce.

The Defendant, Maurice Pollock, a/k/a "Reese," was a member of MMP during the dates of the conspiracy.  The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution.  The Defendant agrees that the "Overt Acts" in which he is named in the Second Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

In particular, on July 10, 2013, in the 5500 block of Force Road, the Defendant possessed a loaded Astra .40 caliber firearm (serial number 8250E).

On April 16, 2015, in the 1910 block of Oak Drive in Baltimore County, the Defendant, Co-Defendant 1, and an unindicted co-conspirator possessed with intent to distribute heroin and cocaine base.  They also led law enforcement officers on a high-speed car chase, during which one of them threw a Smith & Wesson 9mm caliber firearm (serial number PAC7887) from the vehicle.  The vehicle eventually lost a wheel and came to a stop, at which point the Defendant was apprehended by law enforcement.

In June and July 2015, law enforcement officers conducted a court-authorized wiretap of several phones belonging to Co-Defendant 2. The Defendant was intercepted in calls with Co-Defendant 2 discussing drug transactions. For instance, on July 27, 2015, investigators intercepted call number G-323 from the Defendant to Co-Defendant 2, in which Co-Defendant 2 agreed to supply the Defendant with 20 grams of heroin for distribution.

On July 20, 2015, investigators executed a state search warrant at 532 Coventry Lane, Apt. 4, in Baltimore, Maryland, a known drug stash house for MMP. There, they recovered roughly 608 grams of heroin, a digital scale, a hydraulic press, and drug packaging materials.

On July 23, 2015, investigators intercepted call number G-232 from Co-Defendant 2 to Co-Defendant 1, using phone number (410) 202-7648. In the call, Co- Defendant 2 advised Co-Defendant 1 that the Defendant and a now-deceased MMP member had been involved in "a shootout" at the BP gas station the previous night, during which they both had been shot.

On January 1, 2016, Co-Defendant 3 posted a photograph to his Instagram account that pictured the Defendant with Co-Defendant 2, Co-Defendant 3, Co-Defendant 4, Co-Defendant 5, and others, some of whom were making MMP gang signs. Co- Defendant 3 also added the comment: "Roses are red power is black long stroke the fed's, fu\*\* em we still going to count racks. One of us get shoot , a lot of nig\*\*s get whacked. One of us turn rotten…. SSHHH…. We D money that."

On February 5, 2016, Baltimore Police Department officers stopped the Defendant for a traffic violation in the 2400 block of E. Fayette Street. While speaking to the Defendant, the officers observed a clear plastic bag containing a tan powder substance in plain view in the driver's side door compartment. In a subsequent search of the vehicle, the officers recovered the clear plastic bag, as well as a digital scale with tan powder residue. The clear plastic bag was found to contain approximately 3 grams of heroin.

On March 22, 2016, at the BP gas station in the 5200 block of Windsor Mill Road, the Defendant distributed heroin to an undercover officer who was wearing an audio-video recording device. On March 24, 2016, near the intersection of Carlisle Avenue and Denison Street, the Defendant distributed approximately 5 grams of heroin to an undercover agent who was wearing an audio-video recording device. On April 4, 2016, near the intersection of Haddon Avenue and Woodbine Avenue, the Defendant distributed approximately 5 grams of heroin to an undercover agent who was wearing an audio-video recording device.

On September 21, 2016, in a recorded jail call, the Defendant discussed MMP business with Co-Defendant 6. The Defendant asked Co-Defendant 6 to put money on his jail phone account. Co-Defendant 6 told the Defendant that he was out on Dickey Hill Road with Co-Defendant 7 trying to make drug sales. Co-Defendant 6 talked about the reopening of the BP gas station in the 5200 block of Windsor Mill Road, which had been padlocked by Baltimore City earlier in the year. Co- Defendant 6 explained that ever since "the stores opened back up, . . . we been out trying

> to get to whitey" (*i.e.*, trying to make drug sales). Co-Defendant 6 recounted that "the other day . . . we was all outside . . . on Forest Park . . . stopping the traffic." He boasted that cocaine sales were "picking back up" and that he had sold a full ounce of marijuana "in a day and a half . . . all dimes, bagged up." Co-Defendant 6 also used coded language to advise the Defendant that "one of the blickies" (*i.e.*, guns) "came up missing today . . . from up the laundry," where they had stashed it. The Defendant said, "I hope it wasn't none of my blickies," (*i.e.*, guns).
>
> The Defendant agrees that he conspired with other members of MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be trafficked by members of MMP.

ECF No. 602 at 4-6.

The presentence report ("PSR") for this matter provides that Mr. Pollock's criminal history results in a subtotal criminal history core of twelve, and that Mr. Pollock received two "status points" under U.S.S.G. § 4A1.1(d), because he was under probation supervision in two Baltimore City criminal cases at the time the instant offenses were committed. ECF No. 706 at ¶¶ 49-51. And so, Mr. Pollock's total criminal history score is 14. *Id.* at ¶ 51. The PSR also provides that Mr. Pollock's criminal history category is Category VI. *Id.*

The PSR further provides that Mr. Pollock is a career offender, pursuant to U.S.S.G. § 4B1.1(b), because he had two prior convictions for crime of violence or controlled substance offenses. *Id.* at ¶ 52. And so, his criminal history was also elevated to Category VI, pursuant to U.S.S.G. § 4B1.1(b). *Id.; see also* ECF No. 1889 (Sentencing Hearing Transcript).

Pursuant to the Plea Agreement, the parties agreed that the offense level for the racketeering conspiracy offense is 30, pursuant to U.S.S.G. § 2E1.1(a) and § 2D1.1(c)(5). ECF No. 602 at 7. The parties also agreed that there was a 2-level increase to this offense level, pursuant to U.S.S.G. § 2D1.1(b)(4), because Mr. Pollock possessed a firearm. *Id.* Because Mr. Pollock was a career offender, the offense level was elevated to 37. ECF No. 706 at ¶ 34; ECF No. 1889 at 3. In addition, there was a three-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), bringing the total offense level to 34. ECF No. 706 at ¶¶ 35-37; ECF No. 602 at 7.

The Court held a sentencing hearing on February 9, 2018. ECF No. 1889. During the sentencing hearing, the Court adopted the PSR's offense level calculation of 34 and criminal

4

history category calculation of Category VI, resulting in a Sentencing Guidelines range of 262 to 327 months imprisonment. ECF No. 1889 at 3-4. And so, the Court sentenced Mr. Pollock to 144 months imprisonment for each Count, to run concurrently to each other. *Id.*; *see also* ECF No. 722 (Judgment).

### B.   Procedural Background

On June 28, 2024, Mr. Pollock filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821. ECF No. 1872. On September 26, 2024, the Government filed its response in opposition to Mr. Pollock's motion. ECF No. 1898. On January 28, 2025, the Office of the Federal Public Defender for the District of Maryland declined to supplement Mr. Pollock's motion. ECF No. 1917.

Mr. Pollock's motion having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.   Motions To Reduce Sentence

Generally, once imposed by the Court, a federal sentence must remain "final" and undisturbed. 18 U.S.C. § 3582(b). But, Congress has created a narrow exception to this general rule for circumstances where the U.S. Sentencing Commission retroactively amends the applicable guidelines. 18 U.S.C. § 3582(c). In this regard, the Court may reduce a sentence after it has been imposed, where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). And so, the Court may reduce such a sentence, "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The United States Court of Appeals for the Fourth Circuit has held that the Court must employ a two-step approach in considering Section 3582(c)(2) motions. First, the Court "must determine the defendant's eligibility." *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (internal quotations and citations omitted). "Section 3582(c)(2) permits a reduction only if (1) the defendant's term of imprisonment was based on a sentencing range that has subsequently been lowered by the Sentencing Commission, and (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (internal quotations and citations omitted). "Second, the [C]ourt may grant the authorized reduction

5

after considering the factors set forth in [S]ection 3553(a), to the extent that they are applicable. *Id.* (internal quotations and citations omitted). And so, "[t]he ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.* (citations omitted).[2]

### B.    Amendment 821

Amendment 821 to the United States Sentencing Guidelines changed the application of the Sentencing Guidelines with respect to certain offenders who either: (a) earned criminal history "status points" based on commission of an offense while serving a criminal justice sentence, or (b) presented zero criminal history points at the time of sentencing. *See* U.S.S.G. amend. 821. Specifically, Part A of this amendment amends Section 4A1.1 of the Sentencing Guidelines to strike the two status points previously assessed under Section 4A1.1(d) for defendants who committed their offense while under any criminal-justice sentence, including probation, parole, supervised release, imprisonment, work release or escape status. *Id.* at Part A. In addition, Part A adds a new subsection (e), that adds one criminal-history point instead of two points for any defendant who receives seven or more points and who committed his offense while under any criminal-justice sentence as described above. *Id.*

## IV.    ANALYSIS

Mr. Pollock has filed a motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821, upon the grounds that he is eligible for a reduction in his criminal history score under Part A of Amendment 821. ECF No. 1872. And so, Mr. Pollock requests that the Court reduce his sentence. *Id.*

The Government opposes Mr. Pollock's motion and argues that Mr. Pollock is not eligible for a reduction of his sentence under Amendment 821 and the Section 3353(a) factors

---

[2] A reduction in sentence must also be consistent with the applicable policy statements issued by the Sentencing Commission. Relevant to the pending motion, one such policy statement provides that: "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—(A) none of the amendments listed in subsection (d) is applicable to the defendant; or (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) ("In providing that sentencing reductions must be consistent with applicable policy statements, § 3582(c)(2) thus creates a jurisdictional bar to reducing sentences below the range authorized by the Commission.").

6

also do not support a reduction of his sentence. ECF No. 1898. And so, the Government requests that the Court deny Mr. Pollock's motion. *Id*.

For the reasons that follow, Mr. Pollock has not shown that he is eligible for a sentence reduction under Amendment 821. And so, the Court DENIES Mr. Pollock's motion to reduce sentence.

### A. Mr. Pollock Has Not Shown That He Is Eligible For A Sentence Reduction

As an initial matter, Mr. Pollock has not shown that he is eligible for a sentence reduction under Part A of Amendment 821. Pursuant to Part A of Amendment 821, a defendant with seven or more criminal history points will now receive one status point increase, rather than an increase of two status points. *See* U.S.S.G. amend. 821 at Part A. This amendment may be retroactively applied. *Id*.

The evidence before the Court shows that, when Amendment 821 is applied to this case, Mr. Pollock's sentencing range is not lowered by Amendment 821. In this regard, the PSR makes clear that Mr. Pollock received 12 natural criminal history points and that he would have received two "status points" under the old U.S.S.G. § 4A1.1(d), resulting in a criminal history category of Category VI. ECF No. 706 at ¶¶ 49-51. The PSR also makes clear that Mr. Pollock's criminal history category elevated to Category VI, because he is a career offender under U.S.S.G. § 4B1.1(b). *Id.* at ¶ 52.

Given this, the evidence before the Court shows Mr. Pollock's criminal history category would not change when Amendment 821 is applied to this case, because the number of "status points" assigned to Mr. Pollock did not affect his criminal history category or sentence.

Because the application of Part A of Amendment 821 to Mr. Pollock's sentence would not result in lowering the applicable Sentencing Guidelines range for this case, he is not eligible for a reduction of sentence under Amendment 821. U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Williams*, Crim. No. 2:20-cr-01-01, 2024 WL 947841 (S.D.W.V. Mar. 5, 2024) (defendant ineligible for a sentence reduction under Amendment 821 where guidelines range was "the result of his classification as a career offender"). And so, the Court must DENY Mr. Pollock's motion to reduce sentence.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Pollock's motion to reduce sentence.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
